Ricky Renee SNEED, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 05–89–01258–CR, 05–89–01259–CR.

Court of Appeals of Texas,
Dallas.

Jan. 25, 1991.

Rehearing Denied Feb. 26, 1991.

Discretionary Review Refused
April 24, 1991.

Gary A. Udashen, Dallas, for appellant.

Pamela Sullivan Berdanier, Dallas, for appellee.

Before THOMAS and OVARD [1], JJ.

## OPINION

OVARD, Justice.

Ricky Renee Sneed appeals from convictions received in a single jury trial for two cases of aggravated assault on a peace officer. Finding two enhancement paragraphs to be true, the jury set punishment at life imprisonment in each case. In eight points of error, Sneed now complains of the jury charges, sufficiency of the evidence, statements made to the jury panel during voir dire, and ineffective assistance of counsel. Because we agree that the jury charges for the guilty/not-guilty phase contained error and caused egregious harm, we reverse. We hold the evidence sufficient to support a verdict of guilty, and we remand for a new trial.

The parties agree on the general facts of the incident from which the charges arose. On July 8, 1989, at approximately 5:00 a.m., Officers Swinney and Heard of the Duncanville Police Department, in separate squad cars, observed Sneed driving a Chevrolet Blazer. Swinney stopped Sneed for a traffic violation just as Heard was about to stop him for the same violation. All three vehicles stopped in a convenience store parking lot. Swinney approached the driver's side of the Blazer. She discovered that the driver, Sneed, had no identification, and she decided to arrest him. A third officer, Evans, arrived. He and Heard also approached the vehicle. Swinney instructed Sneed to turn off the ignition and exit the vehicle. Sneed turned off the ignition but then reached for the keys as if he were about to restart the vehicle. Swinney reached inside the vehicle and

across Sneed in an attempt to take the keys from the ignition and pull Sneed from the vehicle. Heard also reached for the keys— but from the window on the passenger's side. Sneed then restarted the vehicle, put the Blazer in gear and accelerated. He drove through the parking lot and made a sharp left turn onto the adjacent street. As the vehicle turned, Heard was thrown from the vehicle. Swinney testified that just after Sneed put the vehicle in gear, he pinned her right arm under his left arm so that she could not break away. She stated that she began to run alongside the vehicle as Sneed accelerated but could not keep up and was dragged. She further testified that Sneed let go of her when she attempted to hit him with her flashlight. She then fell to the pavement. Evans testified that he saw the left rear tire of the Blazer run over the upper portion of Swinney's body. Heard suffered scrapes and bruises. Swinney suffered cuts requiring stitches, scrapes, bruises, a torn muscle, a brain hemorrhage, and her tongue was bitten almost in half.

In his first point of error, Sneed contends that the trial court erred in the guilty/not guilty phase, by giving the jury a charge which failed to limit the definitions of the terms "knowingly" and "intentionally" to the result of the conduct. Sneed argues that under the theory of assault for which he was charged, the offense is result oriented. The culpable mental states necessary to support the offense do not apply to the defendant's conduct. *See* TEX. PENAL CODE ANN. § 22.01(a)(1) (Vernon 1989). Both jury charges contained the same definitions of intentionally and knowingly, definitions which covered the nature of the conduct as well as the result of the conduct:

A person acts intentionally, or with intent, *with respect to the nature of his conduct* or to a result of his conduct when it is his *conscious objective or desire to engage in the conduct* or cause the result.

court prior to issuance, of this opinion.

---

1. Justice Howell was a member of the panel at the time these cases were submitted, but left the

A person acts knowingly, or with knowledge, *with respect to the nature of his conduct or to circumstances surrounding his conduct* when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to *a result of his conduct* when he is aware that his conduct is reasonably certain to cause the result.

(Emphasis added). The application paragraphs used the terms "intentionally" and "knowingly." In the case of complainant Heard, the pertinent portion reads: "... [Sneed] did then and there intentionally and knowingly cause bodily injury to Brian Heard, by driving his automobile while said complainant was holding onto said automobile." The corresponding portion of the second charge reads: "... [Sneed] did then and there intentionally or knowingly cause bodily injury to Carol Swinney, by running over said complainant with said automobile."

 A person commits aggravated assault if he intentionally, knowingly, or recklessly causes bodily injury to a peace officer when the accused knows that the person assaulted is a peace officer and while that peace officer is lawfully discharging an official duty. TEX. PENAL CODE ANN. §§ 22.01, 22.02 (Vernon 1989 & Supp.1991). The theory of the offense charged requires no particular conduct.[2] Instead, the statutory subsection prohibits a particular result—causing bodily injury to a peace officer. We have found no case which specifically holds that some theories of aggravated assault are result oriented. However, the Texas Court of Criminal Appeals has dealt with result oriented offenses in the context of other cases. The Court determined that the offense of murder is result oriented and involves no particular conduct. *See Lugo–Lugo v. State,* 650 S.W.2d 72, 81–82 (Tex.Crim.App.1983). The culpable mental states apply to causing the result rather than to engaging in the conduct. Subsequently, the Court ruled that injury to a child and injury to an elderly person are also result oriented offenses. *See Alvarado v. State,* 704 S.W.2d 36, 39 (Tex.Crim.App.1985) and *Kelly v. State,* 748 S.W.2d 236, 239 (Tex.Crim.App. 1988). Drawing on the principles enunciated in *Lugo–Lugo, Alvarado,* and *Kelly,* we conclude that for the theory of aggravated assault charged against Sneed, the culpable mental states necessary to support the offense apply to causing the prohibited result rather to engaging in conduct. Here, the indictments alleged the assaults were committed knowingly or intentionally. The jury may convict the defendant only if the jurors find beyond a reasonable doubt that the accused caused bodily injury to a peace officer, knowing he was a peace officer, and caused the bodily injury intentionally or knowingly.

 The jury may not convict a person of aggravated assault solely on a finding that the accused intentionally or knowingly engaged in conduct which happened to cause bodily injury to a peace officer. *See Lugo–Lugo,* 650 S.W.2d at 81–82. The above-quoted language in the charge that refers to "the nature of his conduct" is appropriate to a charge on an offense that prohibits conduct, such as arson or theft. *See* TEX. PENAL CODE ANN. § 28.02,

**2.** Before a person may be found guilty of aggravated assault under section 22.02 of the Texas Penal Code, he must first satisfy all the elements of at least one theory of simple assault. TEX. PENAL CODE ANN. §§ 22.01, 22.02 (Vernon 1989 & Supp.1991). There are three theories or phases of assault: (1) intentionally, knowingly, or recklessly causing bodily injury; (2) intentionally or knowingly threatening another with imminent bodily injury; and (3) intentionally or knowingly causing physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative. Each of the three theories is sufficient independent of the other two to satisfy the offense. Two of the theories, intentionally, knowingly, or recklessly *causing* bodily injury and intentionally or knowingly *causing* physical contact are result oriented offenses. The culpable mental state applies to causing the required result rather than to engaging in the conduct. The second theory, intentionally or knowingly *threatening* another with imminent bodily injury is a conduct offense and has no required result. The offense is satisfied if the accused intentionally or knowingly engaged in the prohibited conduct—threatening with imminent bodily injury. In our case, the State charged Sneed under a result oriented theory.

31.03 (Vernon 1989 & Supp.1991). That language does not belong in a charge on an offense that does not prohibit conduct. In this aggravated assault case, language that defines a culpable mental state with respect to conduct adds nothing since the culpable mental state does not apply to the conduct, and it allows the jury to do that which the law does not—find the accused guilty of aggravated assault based only on his conduct, rather than on intending or knowing the prohibited result. All references to conduct should have been deleted from the charges. *Kelly,* 748 S.W.2d at 239.

■■■ However, mistakes in the jury charge do not automatically create reversible error. We analyze alleged jury charge error according to the framework enunciated in *Almanza. See Almanza v. State,* 686 S.W.2d 157 (Tex.Crim.App.1985) (on reh'g). The *Almanza* analysis is a two-step test. First, we decide whether error exists in the charge. Second, we must determine whether the error, if any, harmed Sneed sufficiently to require reversal. *Almanza,* 686 S.W.2d at 171. In the second step, determination of harm, the analysis varies depending upon whether the accused objected to the error at trial. If he objected, the error requires reversal if it caused the accused some harm. *Id.* If the accused failed to object, charge error merits reversal only if it caused the accused "egregious harm." *Id.* Egregious harm means, approximately, damage so severe that it denies the accused a fair and impartial trial. *Id.* at 172. Under *Almanza,* we assess harm, egregious and otherwise, in light of the total circumstances of the trial. We examine the state of the evidence, including contested issues and weight of probative evidence, the entirety of the jury charge, the argument of counsel, and any other relevant information the trial reveals. *Id.* at 171.

■■■ No objection was made at trial. We, therefore, must review the entire record to determine whether the improper charges caused Sneed egregious harm requiring reversal. We note first the State's voir dire examination of the jury panel in

which the prosecutor went to great lengths to explore a hypothetical which misstated the law:

How do we prove that someone does something knowingly or intentionally? You look at the surrounding facts and surrounding circumstances. When a person does something knowingly, that means that they're aware of the nature of their conduct or that the circumstances exist.

Or they're aware that their conduct is reasonably certain to cause the result. That means if I bring a stick of dynamite into this room and light it and leave it here burning and it goes off and kills some people or hurts some people, you can infer or a jury could infer that I should have been aware that my conduct was going to injure some people.

Do you understand that? Even though you might believe me when I say I didn't want anybody to get killed, I was just going to scare them, when you set off a bomb or something like that you have to be aware of your conduct or the consequences that might flow from your conduct.

Does everybody understand that?

*We don't have to prove that he intended to cause bodily injury, only that he was aware of his conduct and what his conduct might cause.*

Does everybody understand that? Anybody have a problem with that concept?

How do we prove that someone does something intentionally? A person acts intentionally if it's his conscious objective or desire to engage in the conduct or cause the result.

Once again, going back to the dynamite or whatever *if it was my conscious objective or desire to engage in that conduct then I am guilty of doing it intentionally.*

Does everybody understand that?

Even though I may not have intended the consequences, as long as I wanted to engage in that conduct and I knew what that conduct was.

The State compounded the error during final argument. The prosecutor made numerous statements regarding Sneed's conduct as it related to the proof required to convict. Furthermore, in addition to repeatedly emphasizing the importance of Sneed's conduct, the prosecutor indicated the State did not prove Sneed intended the result obtained:

Okay. I'll give him the one. We didn't prove that he wanted to cause that result. There's no way we can prove that, and that's why I told you on voir dire you can't do that unless you open up a person's mind and look into it. But can we prove that it was his conscious objective or desire to engage in that conduct? Sure we can.

\* \* \* \* \* \*

And he may not have intended to hurt them, but he intended to do everything else he did out there. And you know, from that point, that he's guilty of aggravated assault, because it was his conscious objective to engage in that conduct; he was aware of his conduct; and it was most certainly reasonable that that conduct would result in the injuries that occurred out there.

Collectively, these errors on the part of the State compel us to a finding of egregious harm. Accordingly, we sustain Sneed's first point of error.

In his second point of error, Sneed claims the evidence is insufficient to support the jury's findings of guilt in either case. In reviewing the sufficiency of the evidence, this Court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Little v. State*, 758 S.W.2d 551, 562 (Tex.Crim. App.), *cert. denied*, 488 U.S. 934, 109 S.Ct. 328, 102 L.Ed.2d 346 (1988). All conflicts and reasonable inferences are to be resolved in favor of the verdict.

■ In Sneed's case, the evidence is sufficient to support conviction if a rational jury could have found beyond a reasonable doubt that Sneed caused bodily injury to Heard and to Swinney, knowing that they were police officers discharging their official duties, and that Sneed caused the injuries intentionally or knowingly. Sneed does not challenge the allegation that he caused bodily injury to Heard and Swinney. Sneed does not contest that he knew Heard and Swinney were peace officers who were discharging their official duties when he injured them. Sneed challenges the allegation that he caused the injuries intentionally or knowingly.

We hold that the evidence was sufficient for a rational jury to conclude that Sneed knew with reasonable certainty that speeding off in the Blazer would cause bodily injury to Heard and Swinney. The evidence revealed that Sneed was aware that the two police officers had extended their bodies partially inside the vehicle. Sneed was in physical contact with Heard as they struggled for the gear shift and the keys. Sneed looked directly at Swinney and pinned her arm beneath his as he drove off. Sneed accelerated fast enough to leave tire marks on the pavement. Heard and Swinney sustained the injuries which a reasonable person would expect under the circumstances. Heard suffered bruises, cuts, and scrapes from being dragged along the ground and then falling out of the Blazer. Swinney received serious injuries from being dragged and from falling to the pavement and being run over when Sneed veered left in the Blazer. The evidence was sufficient to support the jury's finding of guilty in both cases.

Even if the jury believed Sneed's assertion that when he sped away he intended only to escape and did not intend to cause bodily injury to the police officers, the jury could have properly convicted him. Knowledge of the probable result is sufficient. If Sneed intended only to escape but was aware that flooring the accelerator while Heard and Swinney leaned inside the Blazer was reasonably certain to cause them bodily injury, the offense was complete. A rational jury had sufficient evidence for such a finding.

Finally, the jury could have deduced reasonably that Sneed specifically intended to cause bodily injury, at least to Officer Swinney. Sneed held her arm inside the Blazer on the driver's side. He released her only as he veered left and ran over her with the left rear wheel. We overrule Sneed's second point of error.

Due to our disposition of point of error one, we need not address the remainder of Sneed's points of error. We reverse this cause and remand it to the trial court.