NO. 12-00-00298-CR




IN THE COURT OF APPEALS

 



TWELFTH COURT OF APPEALS DISTRICT




TYLER, TEXAS


ANTONIO HERNANDEZ,

§

 APPEAL FROM THE 114TH

APPELLANT





V.

§

 JUDICIAL DISTRICT COURT OF



THE STATE OF TEXAS,

APPELLEE

§

 SMITH COUNTY, TEXAS

 

PER CURIAM


 A jury convicted Antonio Hernandez ("Appellant") of Deadly Conduct and assessed his punishment at eight years of
confinement and a $2,500.00 fine. In two issues, Appellant contends that the evidence is legally and factually insufficient
to support his conviction. We affirm.



Background


 Susan Tapia ("Tapia") testified that during June 1996, she was living at 212 South Beverly in Smith County. At this time,
she was living with, among others, Jesus Palacios (1) ("Palacios"), her two children, Palacios' sister, Concepcion Penalosa
("Penalosa"), and Palacios' mother, Delores Vega. Tapia testified that around 8:30 or 9:00 p.m. on June 26, 1996, she was
in her room with Palacios and her two children when she heard Vega telling someone to leave. She then heard someone
kick her door and yell for "Chuey" (2) to come out of the room. Tapia testified that she had known Appellant, Palacios'
brother-in-law, for ten years and recognized Appellant's voice. She stated that Palacios told her to tell Appellant that he
was not there and she did so. She testified that Palacios did not want Appellant to find him because they had been in a
fistfight at work. Tapia then heard two gunshots. She testified that one bullet went through the bottom of the door and
entered the floor and one bullet went through the door "halfway up on the door almost to the door knob" and entered the
floor "a foot" from where her son was lying. Shortly after the shots were fired, she heard Appellant running toward the
front of the house. About two weeks after the incident at 212 South Beverly, Tapia encountered Appellant at a club where
she was working. Tapia testified that Appellant told her that "he was sorry and that it wasn't anything against me or my
kids."

 Tyler police officer James Cooper ("Cooper") testified that in June of 1996, he was a member of the Crime Scene Unit of
the Tyler Police Department. He testified that the responsibilities of the Crime Scene Unit include looking for and
collecting evidence at crime scenes. On June 28, 1996, Cooper went to 212 South Beverly to photograph the scene and to
gather any evidence he could find. Cooper stated that he found a bullet hole in the floor of a hallway approximately two
feet from a bedroom door and another bullet hole in the bedroom door. He stated that the bullet entered the hallway floor at
a slight angle. He traced the bullet that entered the door and found a hole approximately one foot from the door where that
bullet entered the floor of the bedroom. He further testified that he recovered two bullets at the scene. Cooper also
testified that the bullets possibly came from a .38 or .357 caliber firearm and that, most likely, such a firearm was a
revolver rather than an automatic.



Sufficiency of the Evidence

 

 In issue one, Appellant contends that the evidence is legally insufficient to sustain his conviction for Deadly Conduct. In
issue two, Appellant argues that the evidence is factually insufficient to support his conviction. Under both issues,
Appellant asserts that the evidence is insufficient to show that he possessed the requisite culpable mental state to support a
conviction for Deadly Conduct.

Legal Sufficiency 

 The standard of review for legal sufficiency of the evidence is whether, viewing the evidence in the light most favorable to
the jury's verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable
doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); Whitaker v. State, 977
S.W.2d 595, 598 (Tex. Crim. App. 1998). An appellate court should uphold the jury's verdict "unless it is found to be
irrational or unsupported by more than a mere modicum of evidence." Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim.
App. 1988). All conflicts in the evidence should be resolved in favor of the verdict, and every reasonable inference
indulged. Sneed v. State, 803 S.W.2d 833, 837 (Tex. App.-Dallas 1991, pet. ref'd). The jury is the exclusive judge of the
credibility of the witnesses and of the weight to be given their testimony. Barnes v. State, 876 S.W.2d 316, 321 (Tex.
Crim. App. 1994). Likewise, reconciliation of conflicts in the evidence is within the exclusive province of the jury. 
Losada v. State, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986). 

 Sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury
charge for the case. Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge would be one that
accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or
unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant
was tried. Id. Malik controls sufficiency of the evidence analysis even in the absence of alleged jury charge error. See
Gollihar v. State, 46 S.W.3d 243, 252-53 (Tex. Crim. App. 2001).

 A person commits Deadly Conduct if he knowingly discharges a firearm at or in the direction of: (1) one or more
individuals or (2) a habitation, building, or vehicle and is reckless as to whether the habitation, building, or vehicle is
occupied. Tex. Pen. Code. Ann. § 22.05(b) (Vernon 1994). A person acts knowingly, or with knowledge, with respect to a
result of his conduct when he is aware that his conduct is reasonably certain to cause the result. Tex. Pen. Code Ann. §
6.03(b) (Vernon 1994). Appellant contends that the evidence is legally insufficient to prove that he knowingly discharged a
firearm because (1) Cooper could not say whether the shots had been fired intentionally or accidentally, (2) Cooper could
not tell whether Appellant was lifting his arm or dropping his gun hand at the time the shots were fired, and (3) no one saw
Appellant fire the shots. 

 A culpable mental state is almost always demonstrated through circumstantial evidence. In the Matter of V.M.D., 974
S.W.2d 332, 347 (Tex. App.-San Antonio 1998, pet. denied). Further, a culpable mental state may be properly inferred
from the accused's acts, words, and conduct. Wolfe v. State, 917 S.W.2d 270, 275 (Tex. Crim. App. 1996); Perez v. State,
41 S.W.3d 712, 717 (Tex. App.-Corpus Christi 2001, no pet.). Whether we are assessing legal or factual sufficiency of the
evidence, both direct and circumstantial evidence are weighed equally. Geesa v. State, 820 S.W.2d 154, 161 (Tex. Crim.
App. 1991), overruled on other grounds by, Paulson v. State, 28 S.W.3d 570 (Tex. Crim. App. 2000). "In practice,
circumstantial evidence often has equal or greater probative value than direct evidence." In the Matter of V.M.D., 974
S.W.2d at 347. The jury may draw reasonable inferences from circumstantial evidence to ultimate facts. Id. The jury may
use common knowledge, observation and experience gained in the ordinary affairs of life when giving effect to the
inferences that may be reasonably be drawn from the evidence. Griffith v. State, 976 S.W.2d 686, 690 (Tex. App.-Tyler
1997, pet. ref'd). 

 Viewed in the light most favorable to the verdict, the evidence shows that Appellant came over to Palacios' house with a
gun after he and Palacios had been involved in a fistfight at work. Tapia testified that Palacios hid from Appellant and told
her to tell Appellant that he was not in the room. According to Tapia, Appellant kicked the bedroom door, said, "Come
out, you son of a bitch," and called Palacios a coward. She told Appellant that Palacios was not in the room. She then
heard two gunshots. At least one of the gunshots passed through the door and entered the floor of the bedroom. Two
weeks after the incident, Appellant apologized to Tapia for "what happened at the house." Cooper testified that because the
gun used was most likely a revolver, he would have "a little hard time imagining" how such a weapon could be accidentally
fired twice. Having reviewed the record, we conclude that the jury could reasonably infer that Appellant knowingly
discharged a firearm in Tapia's direction. Accordingly, the evidence is legally sufficient to sustain his conviction, and
therefore, issue one is overruled. 

Factual Sufficiency 

 When reviewing the factual sufficiency of the evidence, we must ask whether a neutral review of all the evidence, both for
and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's
determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. Johnson v.
State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). We review the evidence weighed by the jury that tends to prove the
existence of the elemental fact in dispute and compare it with the evidence that tends to disprove that fact. Jones v. State,
944 S.W.2d 642, 647 (Tex. Crim. App. 1996). We review the fact finder's weighing of the evidence and are authorized to
disagree with the fact finder's determination. Clewis v. State, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996). This review
must employ appropriate deference to prevent an appellate court from substituting its judgment for that of the fact finder,
and any evaluation should not substantially intrude upon the fact finder's role as the sole judge of the weight and credibility
to be given to the testimony of the witnesses. Jones, 944 S.W.2d at 648.

 Because the jury is the sole judge of the facts, we must give deference to jury findings. Cain v. State, 958 S.W.2d 404,
410 (Tex. Crim. App. 1997). The weight to give contradictory testimonial evidence is within the sole province of the jury,
because it turns on an evaluation of credibility and demeanor. Id. at 408-09. We are not free to reweigh the evidence and
set aside a jury verdict merely because we feel that a different result is more reasonable. Id. at 407.

 Appellant makes the same arguments concerning factual sufficiency that he does with regard to legal sufficiency. He also
points out that there is no evidence of what kind of gun was used, no gun was recovered and no witness could describe the
gun used by Appellant. Further, although Appellant does not rely upon Penalosa's testimony in his brief, she testified that
she asked Appellant to give her the gun and that the gun went off as Appellant was attempting to do so. She testified that
she believed the gun discharged accidentally. 

 Based on the evidence detailed above, the jury was entitled to conclude that Appellant knowingly discharged a firearm in
Tapia's direction. The jurors were free to weigh the fact that the gun was not recovered and the lack of a description of the
gun and we will not interfere with their evaluation. Id. at 407-09. Contrary to Appellant's assertion that there is no
evidence concerning the type of gun used, Cooper testified that it was possibly a .38 or .357 caliber and that it was most
likely a revolver. While Penalosa testified that the gun went off accidentally, the jury was free to reject this conclusion. Id.
at 410. (A decision is not manifestly unjust merely because the jury resolved conflicting views of the evidence in favor of
the State.). We note that although Penalosa testified that she believed the gun discharged accidentally, she also testified
that the gun fired twice. Moreover, Penalosa testified that Appellant appeared intoxicated, was looking for Palacios, that he
"got close to the door" and yelled "brother-in-law," and that he said "son of a bitch." She also testified that Appellant knew
Tapia was in the room because Tapia had responded to his inquiries about Palacios' whereabouts. After a neutral review of
all the evidence, we conclude that the proof of guilt is neither so obviously weak as to undermine confidence in the
outcome nor greatly outweighed by contrary proof. Accordingly, the evidence is factually sufficient to support Appellant's
conviction. Issue two is overruled.

 The judgment of the trial court is affirmed.



Opinion delivered November 28, 2001.

Panel consisted of Davis, C.J., Worthen, J., and Griffith, J.















































(DO NOT PUBLISH)


1. The testimony is somewhat unclear as to whether Tapia and Palacios were married at this time. However, during the
time she lived with Palacios, Tapia went by the name Susan Palacios.

2. Chuey is Palacios' nickname.